(No. 2877—)

JULIAN R. LITTLE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 13, 1937.*

CHARLES E. KELLER, for claimant.

OTTO KERNER, Attorney General; SVEINBJORN JOHNSON and GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

Claimant, Julian R. Little, seeks an award for loss of wages, expense for hospital and medical attention and partial loss of vision, resulting from injuries sustained by him on July 26, 1935 while employed by the Board of Trustees of the University of Illinois, in the Department of Chemistry at the University. At the time of the accident claimant was preparing one of the chemicals which is sold by the Department in which he was working to the University and other institutions. He had been engaged in this employment since June 17th, 1935. Prior to that time he had been employed by the University as an Assistant Instructor on half time service, for which he received Six Hundred ($600.00) Dollars over a nine month period and in addition thereto, was exempted from fees at the University of approximately One Hundred ($100.00) Dollars per year. His wages at the time of the accident were Forty (40) Cents per hour, for a ten hour day, six days per week. The Division of Organic Chemical Manufacturers of the University employ many persons during the summer months to manufacture chemicals. All are employed on a short time basis and neither the claimant nor any other employee had been engaged in the employment of the University in the same class and employment for the full year immediately preceding the accident.

The injuries in question occurred as the result of a flask collapsing. The material on which Mr. Little was working was in a fairly large flask under slightly reduced pressure. As he was trying to remove a volatile material from it the walls of the flask suddenly gave way and the liquid was thrown in all directions. Claimant had just taken off his glasses to wash his face and the liquid not only sprayed upon his skin resulting in slight burns but was thrown into his eyes causing the injuries now complained of. He received immediate first-aid, then went to the Carle Hospital and received care from Dr. G. L. Porter who testified that from the time he first treated the patient on July 26, 1935 the destruction of corneal epithelium progressed daily in each eye until August 2nd, at which time the lower two-thirds of the right

cornea and the lower half of the left cornea were involved. Dr. Porter accompanied his patient to the Mayo Clinic, at Rochester, where further treatment was given. He took his patient in his, Dr. Porter's car, for which no charge was made. They were accompanied by claimant's wife, who attended to the changing of bandages on patient's eyes and bathing them during the course of the trip, thereby saving the expense of a nurse, who would otherwise have been required, according to Dr. Porter. Prior to the accident claimant had worn glasses for many years. He was examined before the Health Officer, Dr. J. H. Beard of the University, on September 15th, 1934, and his record at that time shows that his vision without glasses was 20/40 in the right eye; 20/25 in the left eye; normal with correction in both eyes. He again examined the patient the day before his testimony on April 20th, 1936.

Dr. Beard testified that pursuant to the rules laid down by the Ophthalmological section of the American Medical Association, he arrived at the visual efficiency of claimant's right eye of sixty-five (65) per cent loss, and for the left eye at a loss of thirty-seven and seven tenths (37.7) per cent, giving a total permanent disability of forty-four and five tenths (44.5) per cent of visual efficiency. Dr. Porter testified that the percentage loss of visual efficiency is fifty-one (51) per cent in the right eye for distance and seventy-three (73) per cent for near vision; and for the left eye, thirty (30) per cent for distance and thirty-six (36) per cent for near vision, and that the average loss is sixty-two (62) per cent in the right eye and thirty-three (33) per cent in the left eye. That this loss percentage in the loss of vision is the loss existing with use of glasses, and that without glasses his vision would be poorer. A prior examination at the University Health Service Office, September 15th, 1934, revealed a vision of 20/20 in each eye with correction. Without correction, the vision in the right eye was 20/40, and in the left eye 20/25. The visual acuity with correction was normal at that time. It further appears from the testimony of Dr. Porter that a portion of the cornea in each eye is opaque as a result of the accident and that such condition is permanent, and that this condition is responsible for the loss of visual acuity.

Dr. Hallard Beard, Associate Professor and Acting Head of the Department of Ophthalmology of the University of

Illinois College of Medicine, testified that he examined claimant, on December 9th, 1936; that without glasses his visual acuity in the right eye was 20/200 and in the left eye was 20/65 minus 1. That with his glasses the visual acuity of the right eye was 20/40 minus 1, and of the left eye 20/25 minus 2. That patient has been wearing glasses ever since he was nine or ten years of age, and that the condition of the pupils was round, equal and active, with no sign of redness in either eye, and that such condition of the pupils and eyes is a normal condition; further, that the optic nerves of both eyes and the ocular tension or pressure were quite normal. Dr. Beard further testified that there was a large opacity over the lower two-thirds of the cornea of the right eye extending through all layers of the cornea. On the cornea of the left eye is a roughly circular, irregular superficial opacity of low density in front of the lower part of the pupil; also a dot one-fourth millimeter wide on the right lens in the center of the pupil, and one three times as large on the left lens. From his examination he states that the loss of visual efficiency of Mr. Little's right eye is approximately seventy-five per cent (75%) and of the left eye approximately fifty per cent (50%); that he will be continually annoyed by any strong light, and when subjected to average conditions of laboratory and office the handicap of vision will be greater than the bare estimate of the loss of visual efficiency so testified to by him; further, that such condition is permanent, and that such loss of vision was caused by the contact of his eyes with the caustic or corrosive chemical that entered his eyes at the time of the accident in question.

Claimant's work is such that the injury to his eyes in near vision is apparently a more serious loss than that resulting in distant vision. Considering the testimony of the three Doctors we find that on the right eye the average loss in near vision work is fixed at seventy-one per cent (71%) and of the left eye at forty-one and two tenths per cent (41.2%).

Accepting the above figures as the basis upon which compensation for loss of vision should be determined, we are next to consider the basis of earnings upon which computation should be made. Claimant was not engaged in the same grade of employment for the same employer for the full year immediately prior to the accident, and neither had others been so employed in the same or neighboring employments of

the same kind. The work in question was carried on for short periods through the summer months, and as heretofore stated, claimant's wage was Forty (40) Cents per hour for a ten hour day. His employment would therefore come within the provisions of *Section 10 (e)* of the Workmen's Compensation Act of Illinois, under which the minimum number of days to be used as a basis for determining a year's work is fixed at a minimum of two hundred (200) days. Upon such basis claimant's annual earnings would figure Eight Hundred ($800.00) Dollars, with an average weekly wage of Fifteen and 38/100 ($15.38) Dollars.

The Workmen's Compensation Act contains the following provisions relative to the loss of sight:

"For the loss of the sight of an eye or for the permanent and complete loss of its use, fifty percentum of the average weekly wage during one hundred twenty weeks."

*Sec. 8 (e) 16, Ill. Workmen's Compensation Act.*

"For the permanent partial loss . . . of sight of an eye . . . fifty percentum of the average weekly wage during that proportion of the number of weeks in the foregoing schedule provided for the loss of sight of an eye which the partial loss of use thereof bears to the total loss of sight of an eye."

*Sec. 8 (e) 17, Ill. Workmen's Compensation Act.*

Under the facts here in evidence claimant would therefore be entitled to an award of Six Hundred Fifty-five and 18/100 ($655.18) Dollars for the partial loss of use of his right eye, and Three Hundred Seventy-nine and 99/100 ($379.99) Dollars for the partial loss of use of his left eye, or a total of One Thousand Thirty-five and 18/100 ($1,035.18) Dollars. To this sum is to be added temporary total disability for a period of eight (8) weeks from July 6, 1935 to September 1, 1935 on the basis of fifty (50) per cent of his average weekly wage of Fifteen and 38/100 ($15.38) Dollars, i. e. Seven and 69/100 ($7.69) Dollars, or Sixty One and 52/100 ($61.52) Dollars.

In addition thereto, it appears from the record and it is conceded by counsel for respondent that Doctor and Hospital bills owing to the following persons, and in the following amounts, should be allowed.

| | |
|---|---|
| Carle Hospital Clinic, Urbana, Illinois | $175.00 |
| Carle Memorial Hospital, Urbana, Illinois | 32.00 |
| Mayo Clinic, Rochester, Minnesota | 25.00 |
| Worral Hospital, Rochester, Minnesota | 16.28 |

Also that claimant has expended the sum of Forty Eight and 73/100 ($48.73) Dollars for necessary care during his temporary total disability for which he is entitled to reimbursement as shown by the record herein.

An award is hereby made in favor of claimant for the sum of $1,145.42 as compensation; also a further award in his favor for the use of the hereinafter named Clinics and Hospitals as follows, to-wit:

| | |
|---|---|
| Carle Hospital Clinic, Urbana, Illinois..................... | $175.00 |
| Carle Memorial Hospital, Urbana, Illinois................. | 32.00 |
| Mayo Clinic, Rochester, Minnesota........................ | 25.00 |
| Worrall Hospital, Rochester, Minnesota................... | 16.28 |
| Total ........................................... | $248.28 |

Of said award the amount due claimant for temporary total disability of $61.52, and the amount due for moneys expended for necessary care during such temporary total disability, of $48.73, and the several amounts due the various hospitals herein above enumerated amounting to $248.28, are all payable from the appropriation made under Senate Bill No. 483 from the "University of Illinois Revolving Fund," (Senate Bill No. 483, Sess. Laws, 1937 p. 239, No. 8) in the usual manner of disbursements therefrom.

That portion of said award made for specific loss suffered by claimant, i. e.:

| | |
|---|---|
| For 71 per cent partial loss of vision of right eye....... | $655.18 |
| For 41.2 per cent partial loss of vision of left eye........ | 379.99 |
| Total ........................................... | $1,035.17, |

is payable in weekly installments of $7.69 per week, dating from July 6, 1935. Compensation in the sum of $915.11 accrued by the 16th day of October, 1937.

The compensation due for temporary total disability and money necessarily expended in special care during such temporary total disability, amounting together to $110.25 (also the sum of $248.28 due the several hospitals and clinics above enumerated) will presumably be paid instanter.

It is further ordered that the sum of $804.86 (being a part of said total award) shall be paid to claimant as compensation earned to October 16, 1937, for which immediate payment is due; and that the further balance of $230.32 shall be paid to claimant in future monthly warrants based upon

weekly payments of $7.69 per week for twenty-nine (29) weeks; and one final payment of $7.31.

This award of $1,035.17 representing the lump payment of $804.86, and the future weekly payments, being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3, 1937 (Sess. Laws 1937, p. 83), and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the General Fund in the manner provided for in such Act.